Citation Nr: 1702622 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 11-04 295 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent prior to March 27, 2013, and in excess of 50 percent thereafter for depressive disorder. 

2. Entitlement to a disability rating in excess of 20 percent for mechanical low back pain with degenerative changes.

3. Entitlement to an initial disability rating in excess of 10 percent for sciatic neuropathy of the right lower extremity.

4. Entitlement to a total disability rating based on individual unemployability (TDIU).


ATTORNEY FOR THE BOARD

Devon Rembert-Carroll, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1973 to July 1997. 

The matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision issued by the Regional Office (RO) of the Department of Veterans Affairs (VA) located in Winston-Salem, North Carolina.

In a July 2014 decision, the Board remanded the appeal for further development. 

The Board notes that after the most recent May 2016 supplemental statement of the case the Veteran submitted additional records relating to his psychiatric disability and his employment without a waiver of initial agency of original jurisdiction review. As the Board is granting the claim for TDIU consideration of such evidence is not prejudicial in regards to this issue. Additionally, as the Board is remanding the issue of entitlement to an increased rating for depressive disorder, such evidence will be addressed on remand. 

This appeal was processed using the Veterans Benefits Management System (VBMS). A review of the Veteran's Virtual VA claims file reveals documents that are either duplicative or irrelevant to the issues on appeal. 

The issues of entitlement to increased ratings for depressive disorder and mechanical low back pain are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the entire appeal period, the Veteran's sciatic neuropathy of the right lower extremity has been manifest by mild incomplete paralysis of the sciatic nerve. 

2. Beginning June 28, 2016, the evidence of record is at least in relative equipoise as to whether the Veteran's service-connected disabilities precluded him from securing or following substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for sciatic neuropathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.3, 4.6, 4.7, 4.120, 4.124a, Diagnostic Code 8520 (2016).

2. The criteria for a TDIU were met on June 28, 2016. 38 U.S.C.A. §§ 1155, 5110(a), (b)(2) (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 3.400, 4.3, 4.16(a) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide the Veteran notification of the information and evidence necessary to substantiate the claim submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103 (a) (West 2014); 38 C.F.R. § 3.159 (b) (2016). 

In light of the Board's favorable decision to grant TDIU to the extent allowed by law, no discussion of the Board's duties to notify and assist are necessary for this issue. 

The Veteran's claim for a higher rating for sciatic neuropathy of the right lower extremity arises from a disagreement with the initial evaluation that was assigned following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015). Here, the Veteran's service treatment records and post-service private treatment records have been associated with the claims file. Additionally, the Veteran has not identified any records that have not been requested or obtained. 

In regards to the Veteran's claim for a higher initial rating for sciatic neuropathy of the right lower extremity the Veteran was afforded VA examinations in January 2010 and March 2013. The Board finds that the VA examination reports are adequate because the examiners conducted clinical evaluations, interviewed the Veteran, and described the Veteran's sciatic neuropathy of the right lower extremity in sufficient detail so that the Board's evaluation is an informed determination See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The Board acknowledges that the VA examination is almost four years old. However, the record does not show, and the Veteran does not allege, that the Veteran's symptoms have worsened since the March 2013 VA examination. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007).

Additionally, the Board finds that the RO has substantially complied with the July 2014 remand directives which included attempting to obtain outstanding private treatment records and records regarding a Workman's' Compensation claim. See Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141 (1999) (holding that another remand is not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Increased Rating

The Veteran contends that his sciatic neuropathy of the right lower extremity is more severe than reflected in his current disability rating. 

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § Part 4 (2016). Ratings for service-connected disabilities are determined by comparing the Veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. 

The veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where, as here, the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of "staged rating" is required. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

When there is a question as to which of two ratings to apply, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating, otherwise the lower rating shall be assigned. 38 C.F.R. § 4.7 (2016). 

After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2016).

The Veteran's sciatica neuropathy of the right lower extremity is currently rated as 10 percent disabling under 38 C.F.R. § 4.124a, Diagnostic Code 8520, for paralysis of the sciatic nerve. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2016). Under Diagnostic Code 8520, a 10 percent rating requires evidence of mild incomplete paralysis of the sciatic nerve. A 20 percent rating requires evidence of moderate incomplete paralysis of the sciatic nerve. A 40 percent rating requires evidence of moderately severe incomplete paralysis of the sciatic nerve. A 60 percent rating requires evidence of severe incomplete paralysis with marked muscular atrophy. Finally, the maximum 80 percent rating requires evidence of complete paralysis, where the foot dangles and drops, no active movement of the muscles below the knee is possible, and flexion of the knee is weakened or (very rarely) lost. 38 C.F.R. § 4.124 (a), Diagnostic Code 8520.

"Incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a, paragraph immediately preceding DC 8510. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id.

The terms "mild," "moderate" and "severe" are not defined in the rating schedule; rather than applying a mechanical formula, VA must evaluate all the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. It should also be noted that use of descriptive terminology such as "mild" by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 U.S.C.A. § 7104 (a); 38 C.F.R. §§ 4.2, 4.6. Mild is generally defined as "not being or involving what is extreme" or "not severe: temperate." Merriam-Webster's Collegiate Dictionary, 787 (11th ed. 2012). Moderate is generally defined as "tending toward the mean or average amount or dimension." Id. at 798. Severe is generally defined as "of a great degree: serious." Id. at 1140.

In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. 38 C.F.R. § 4.120. 

Turning to the evidence of record, the Veteran was afforded a VA examination in January 2010. The Veteran reported that his back pain radiated to his right side. On physical examination motor examination was normal and there was no muscle atrophy. Vibration sensory testing of the right lower extremity was noted as 1/2. The examiner noted that this was located at the lateral side of the leg and dorsum of the foot. Pin pick, light touch and position sense were noted as normal. Reflex examination was normal. The examiner noted that the Veteran had decreased strength in his lower extremity. 

The Veteran was afforded another VA examination in March 2013. The Veteran reported that sometimes the pain radiates to his bilateral lower extremities. The Veteran's muscle strength was noted as normal with no muscle atrophy. Reflex examination was noted as normal. Sensory examination was noted as normal. The examiner noted that the Veteran had radiculopathy. The Veteran was noted as having mild intermittent pain. The examiner noted that the Veteran did not have any other symptoms of radiculopathy. The examiner noted that the Veteran's sciatic nerve was involved and the severity was mild. 

Based on the above, the Board finds that a rating in excess of 10 percent for sciatic neuropathy of the right lower extremity is not warranted. 

For the entire appeal period the Veteran's disability has been manifested by decreased vibration sense and pain which has been repeatedly noted as mild. Additionally, the Veteran was found to have no other symptoms of radiculopathy and there is not competent and credible evidence of record that the Veteran has any symptoms that are not wholly sensory. Therefore, the Board finds that the Veteran's symptoms did not more closely approximate the criteria contemplated for moderate incomplete paralysis at any time during the appeal period. 

The Board has considered whether a staged rating is appropriate. However, as outlined above, the Veteran's symptomatology has not warranted a disability evaluation in excess of 10 percent at any time during the pendency of this claim. As such, staged ratings are not warranted. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). The Board has also considered whether other diagnostic codes regarding diseases of the peripheral nerves are potentially applicable in this case. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). However, the medical evidence of record is against a finding that the Veteran has been diagnosed with a disability contemplated in one of the other diagnostic codes. Therefore, a higher rating under a different diagnostic code is not warranted. 

The Board notes that, in reaching the above-noted determinations, the lay statements of record have been considered. However, the Board finds that the lay assertions made in support of his claim for a higher rating are not entitled to more weight than the objective findings rendered by trained medical professionals in evaluating the Veteran's sciatic neuropathy of the right lower extremity. See 38 C.F.R. § 3.159 (a)(1) (2016). 

Thus, the claim for a higher rating must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the assignment of a higher rating, that doctrine is not for application. See 38 U.S.C.A. § 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2015); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

Other Considerations

An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321 (b)(1). 

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected sciatic neuropathy of the right lower extremity with the established criteria found in the rating schedule. As noted above, the Veteran's symptoms are decreased vibration sense and pain. The Veteran has not described any exceptional or unusual features of his disability and there is no objective evidence that any manifestations are unusual or exceptional. Given all of the foregoing, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating under 38 C.F.R. § 3.321 (b)(1) is not warranted. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996).

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

TDIU

The Veteran contends that he is unable to work due to his service-connected low back disability and depressive disorder. 

Where the schedular rating is less than total, a total disability rating for compensation purposes may be assigned when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

Marginal employment shall not be considered substantially gainful employment. Marginal employment generally shall be deemed to exist when a Veteran's earned annual income does not exceed the amount established by the United States Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. 38 C.F.R. § 4.16 (a)(2016).

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) Disabilities resulting from common etiology or a single accident, (3) Disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) Multiple injuries incurred in action, or (5) Multiple disabilities incurred as a prisoner of war. 

Consideration may be given to a Veteran's level of education, special training, and previous work experience in arriving at whether a TDIU rating is warranted, but the Veteran's age or the impairment caused by non-service connected disabilities may not be considered in such a determination. 38 C.F.R. §§ 3.341, 4.16, 4.19 (2016). 

The Veteran filed a claim for an increased rating for his low back disability on January 30, 2010. Since that time the Veteran's service connected disabilities include depressive disorder rated as 10 percent disabling prior to March 27, 2010, and 50 percent thereafter; mechanical low back pain with degenerative changes, rated as 20 percent disabling; acne keloids nuchale and pseudofolliculitis, rated as 10 percent disabling; sciatic neuropathy of the right lower extremity, rated as 10 percent disabling; radiculopathy of the left lower extremity rated as 10 percent disabling effective March 21, 2013; and bilateral hearing loss, hypertension and scar of the gluteal fold right and right interior chest, all rated as noncompensable. Therefore, the Veteran met the criteria for a schedular TDIU on March 27, 2013. His combined rating was 70 percent and depressive disorder was rated at least 40 percent. Therefore, the Veteran's claim turns on whether his service connected disabilities rendered him unable to secure or follow substantially gainful employment during this time. 

Turning to the evidence of record, in a July 2009 private treatment record a physician noted that the Veteran's depressed mood and lethargy interfere with his ability to be consistently productive at any job. It was noted that because of problems with concentration and memory he was unable to learn new tasks. His irritability and feelings of isolation severely limited his ability to initiate or sustain work relationships. The physician concluded that due to the longstanding nature of his illness and increased health concerns his prognosis for recovery was poor and therefore she considered him to be permanently and totally disabled and unemployable. 

The Veteran was afforded a VA psychiatric examination in January 2010. It was noted that the Veteran was working full-time teaching junior ROTC. It was noted that the problem related to occupational functioning was inappropriate behavior. The Veteran reported getting irritated and upset with kids at work. The Veteran reported that he believes this was related to his depression. He reported that one time he was written up for yelling at kids and another time principal reprimanded him for yelling at kids. The Veteran reported he believes he should be able to manage it better. The Veteran reported missing a couple days because he did not feel like going in. He reported that this happened four days in the past year. The Veteran reported that he missed two days because of back pain. 

The Veteran was afforded a VA spine examination in January 2010. The examiner noted that the Veteran's low back condition and right sciatic neuropathy had significant effects on his usual occupation. The examiner noted that the resulting work problems were increased tardiness and increased absentiism. The effect the disability had on occupational activities was noted as decreased mobility, problems with lifting and carrying, difficulty reaching, decreased strength and lower extremity pain. 

The Veteran was afforded a VA back examination in March 2013. The examiner noted that the Veteran reported that as a junior ROTC instructor he was unable to stand for no longer than 10 minutes before he had lower back pain. The Veteran reported that he had to take frequent breaks at work due to back pain. He reported that he missed about four days from work within a year's time frame due to back pain.

The Veteran was afforded a VA psychiatric examination in March 2013. The Veteran reported that he worked as a junior ROTC instructor for the prior 12 years. The Veteran reported that work was stressful. He described increased frequency of raising his voice at students, now two to three times a day and described increased irritability. He reported that he had misused four days during the school year due to back pain and related coping difficulties. He reported that in the past he would miss 10-15 days a year but he had been trying to reserve days off out of fear that an emergency will happen related to his back. He reported that he takes ibuprofen and can sit and give instructions however he was relying more heavily on his cadet leaders to help over the past two years. He reported that he had difficulty sitting or standing too long. The Veteran reported that he had been reprimanded twice on the job. The Veteran denied concerns about the stability of his job related to the reprimands. He did note performance changes. The examiner noted that the Veteran's current functioning was suggestive of mild moderate impairments in an occupational setting. 

On his July 2016 TDIU application, the Veteran reported that he was unable to secure or follow substantially gainful employment due to his depressive disorder. The Veteran reported that his disability affected his full-time employment; he last worked and became too disabled to work on June 28, 2016. The Veteran reported that he worked 50 hours per week and lost 240 hours from illness. The Veteran reported that his highest gross earning per month was $5,200. 

In a July 2016 request for employment information, the Veteran's former employer noted that the Veteran was no longer working due to early retirement as of June 28, 2016. The employer noted that the Veteran was a junior ROTC instructor and worked eight to ten hours a day or 40 to 50 hours a week. The employer noted that in the 12 months prior to the last date of employment the Veteran earned $65,000. The employer also noted that the Veteran missed 240 hours in the 12 months preceding the last date of employment due to disability. 

In a July 2016 private treatment record, a physician noted that the Veteran retired at the end of the school year because he found the job so stressful and because his back limits him as to what he can do on the job. It was noted that the Veteran cannot sit or stand for extended periods of time. He could not drive all the way to work from his house without stopping to get out of the car and stretch his back. He cannot lift heavy objects. It was noted that the Veteran's back pain affects his memory and concentration. He reported that he has to put notes on his phone to remind him to do things. He loses his train of thought when talking. His wife complains that he has no patience. He has a hard time following directions. The physician noted that the Veteran's back pain and secondary depression symptoms have caused significant disturbances in all areas of his life. She stated that because of his service connected back pain and secondary depression he is unable to maintain any job that requires extended periods of concentration, decision-making, and interaction with other people. She stated that the Veteran's disability interferes with his ability to attend to and process information that would enable him to learn new tasks. She stated that his irritability and lack of patience severely compromise his ability to initiate or sustain work relationships. She stated that she considers him to be him to be totally and permanently disabled and unemployable. 

The Board notes that the question of employability is ultimately one for the fact finder to decide, and not a medical provider. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013). In this case, the Board finds that the competent and credible evidence of record illustrates that due to the symptoms his service-connected disabilities the Veteran has both physical and mental limitations that would prevent him from performing both manual and sedentary labor. The Board therefore resolves all reasonable doubt in the Veteran's favor and determines that a TDIU rating is warranted on a schedular basis as of June 28, 2016, the date the Veteran last worked. 38 U.S.C.A. §§ 5107 (b), 5110(a), (b)(2); 38 C.F.R. §§ 3.102, 3.400, 4.3. Accordingly, the appeal is granted. 

The Board notes that from June 30, 2009, the date of the Veteran's claim for entitlement to an increased rating for his low back disability, to March 27, 2013, the Veteran did not meet the schedular requirements under 38 C.F.R. § 4.16 (a). However, entitlement to a total rating, on an extraschedular basis, may nonetheless be established, in exceptional cases, when the Veteran is unable to secure and following a substantially gainful occupation by reason of a service-connected disability. 38 C.F.R. § 4.16 (b). The Board also notes that from March 27, 2013, to June 27, 2016, the Veteran did meet the criteria for a schedular rating. The Board also acknowledges the June 2009 private opinion that concluded that the Veteran was unemployable. However, during this period the Veteran was employed full-time. The Board acknowledges the Veteran's reported time loss due to disability. However, even when taking into consideration the Veteran's time loss, the Veteran's employment prior to June 28, 2016, has not been shown to have been marginal. The Board notes that the poverty threshold for one person in 2015 was $12,082 and the evidence of record does not show that the Veteran's income fell below the poverty threshold at any time prior to June 28, 2016. Therefore, the Board finds that prior to June 28, 2016; the evidence of record is against a finding of a TDIU on either a schedular or extraschedular rating. 

In reaching the above conclusions, the Board has resolved the benefit of the doubt in the Veteran's favor to the extent indicated.


ORDER

Entitlement to an initial disability rating in excess of 10 percent for sciatic neuropathy of the right lower extremity is denied.


Entitlement to a TDIU is granted effective June 28, 2016, subject to the laws and regulations governing monetary awards. 


REMAND

In regards to the Veteran's service-connected depressive disorder, the Veteran was last afforded a VA examination in March 2013. The examiner noted that the Veteran's functioning was suggestive of mild to moderate impairment in an occupational setting. As noted above, the evidence of record since the last VA examination reveals that the Veteran took an early retirement from his job on June 28, 2016. On his July 2016 TDIU application, the Veteran asserted that this was due to his depressive disorder. As such, the Board finds that the Veteran should be afforded new VA examinations to determine the current severity of his depressive disorder. See Snuffer v. Gober, 10 Vet. App. 400 (1997) (noting that a veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (determining that Board should have ordered contemporaneous examination of Veteran because a 23-month old exam was too remote in time to adequately support the decision in an appeal for an increased rating]).

In regards to the Veteran's low back disability, the Veteran was last afforded a VA examination in March 2013. Since then, the Court held in Correia v. McDonald, 28 Vet. App 158 (2016), that the final sentence of 38 C.F.R. § 4.59 requires that the examiner record the results of range of motion testing "for pain on both active and passive motion [and] in weight-bearing and non-weight-bearing." The VA examinations do not comply with Correia. As such, a remand is necessary to afford the Veteran another VA examination.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran another opportunity to identify any pertinent treatment records for his claimed disabilities. The RO/AMC should secure any necessary authorizations. If any requested outstanding records cannot be obtained, the Veteran should be notified of such.

2. Schedule the Veteran for a new VA examination to determine the current severity of his depressive disorder. The Veteran's claims file, including this remand, should be made available for review by the examiner in conjunction with the examination. The examiner should review the claims folder and this fact should be noted in the accompanying medical report. 

All appropriate testing should be conducted and complaints and clinical manifestations should be reported in detail. The examiner must describe the nature, frequency, current severity, and all symptoms associated with the Veteran's depressive disorder. 

A fully articulated medical rationale for each opinion expressed must be set forth in the medical report. The examiner should discuss the particulars of this Veteran's medical history and the relevant medical science as applicable to this case, which may reasonably explain the medical guidance in the study of this case.

3. Schedule the Veteran for a new VA examination to determine the current severity of his low back disability. The Veteran's claims file, including this remand, should be made available for review by the examiner in conjunction with the examination. The examiner should review the claims folder and this fact should be noted in the accompanying medical report. All indicated studies, including x-rays should be performed.

The examiner should record the results of range of motion testing for pain on both active and passive motion and in weight-bearing and non-weight-bearing or state why such testing is not warranted or not feasible in light of Correia v. McDonald, 28 Vet. App 158 (2016).

The examiner should also express an opinion concerning whether there would be additional functional impairment on repeated use or during flare-ups (if the Veteran describes flare-ups). The examiner should assess the additional functional impairment on repeated use or during flare-ups in terms of the degree of additional range of motion loss. If not feasible to do so to any degree of medical certainty without resort to speculation, then the examiner must provide an explanation for why this is so.

The examiner should also note whether the low back disability results in incapacitating episodes, and indicate the total duration of any episodes.

A fully articulated medical rationale for each opinion expressed must be set forth in the medical report. The examiner should discuss the particulars of this Veteran's medical history and the relevant medical science as applicable to this case, which may reasonably explain the medical guidance in the study of this case.

4. After completing the above, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 
(West 2014).



______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs